**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | Civil No.: _____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL DEMOCRATIC REPUBLIC OF | ) | |
| ETHIOPIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MOTION FOR LEAVE TO PROCEED IN PSEUDONYM**

Plaintiff, John Doe, a.k.a. Kidane, by and through counsel, hereby respectfully moves for leave to proceed in this action via a pseudonym of either John Doe or Kidane. Plaintiff requests to use one of these pseudonyms in the caption of the complaint, and to list Plaintiff's counsel's address as the address for the Plaintiff in the Court's records. As set forth in greater detail in the accompanying memorandum, this matter involves highly sensitive information. Plaintiff has a reasonable and credible fear that, if his identity were used in connection with this lawsuit, he—as well as innocent members of his family both in the United States and abroad—would face the threat of harmful retaliation from members of the Ethiopian government, the Defendant in this action. This action is a suit against the government of Ethiopia for intruding on Plaintiff's seclusion and violating the Wiretap Act by placing malicious software on his computer in order to monitor his activity and listen to his phone calls. Plaintiff's privacy has been breached by the Defendant, and allowing him to proceed in pseudonym will allow Plaintiff to begin to contain that breach.

WHEREFORE, Plaintiff respectively requests that this Court grant the Motion for Leave to Proceed in Pseudonym and allow the Plaintiff to be known as either John Doe or Kidane.

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN PSEUDONYM

Plaintiff respectfully submits this memorandum in support of the Motion for Leave to Proceed in Pseudonym in order to protect the identity of Plaintiff, a U.S. citizen who is a former citizen and resident of the country of Ethiopia who has provided technical and administrative support to other members of the Ethiopian diaspora. Some of Plaintiff's contacts participate in a movement to protest and raise awareness of the current state of political corruption and human rights abuse occurring in Ethiopia. Declaration of John Doe (aka "Kidane") ("Kidane Decl.") at ¶¶ 2-5. A proposed Order is also submitted herewith.

Plaintiff Mr. Kidane was born in Ethiopia and resided there for decades before moving to the U.S. Kidane Decl. at ¶ 2. Mr. Kidane has from time to time provided administrative and technical support for a number of Ethiopian expatriates who raise awareness and advocate against the abuses of the Ethiopian government. *Id.* at ¶ 5. In providing technical assistance to the diaspora movement, Mr. Kidane's personal computer was subject to a malware attack by the government of Ethiopia that installed, without his permission or knowledge, a computer monitoring software program called FinSpy. Complaint, ¶¶ 55-77. This software subsequently recorded and transmitted back to the government of Ethiopia a record of Mr. Kidane's activities on his computer—including recordings his private phone calls made via Skype—in violation of United States federal and state laws. *Id.* Mr. Kidane alleges that the Ethiopian government was responsible for both the distribution of the malware software and the subsequent monitoring of his private activities including his phone calls. *Id.,* ¶¶ 78-89.

Plaintiff has consistently used the pseudonym of "Kidane" in his work providing support to the Ethiopian diaspora. Mr. Kidane uses a pseudonym to protect the physical and mental well being of both himself and his family members, both in the United States and around the world, who may be targeted by the Ethiopian government in response to his work with the diaspora. Kidane Decl. at ¶ 6. Indeed, Mr. Kidane's involvement has been so shielded via his pseudonym that not even members of his closest, most immediate family know about his work with the diaspora. *Id.*

Due to the highly sensitive nature of this case and the very real potential that Plaintiff and his immediate family members could be physically harmed if his identity is connected with the subject matter of this lawsuit, Plaintiff respectfully requests that this Court allow him to proceed via pseudonym. Mr. Kidane would be extremely hesitant to continue to seek legal redress in this case should he be denied this request, as he fears the litigation would put his life and the lives of his family at substantial risk. Kidane Decl. at ¶ 7.

## I.   BACKGROUND AND MATERIAL FACTS

### A.   The Defendant Has a Documented History of Limited Political Expression, Expansive State Surveillance, and Physical Retaliatory Abuse Towards Proponents of Opposing Political Views.

The Defendant, the government of Ethiopia, has a documented history of engaging in physical abuse as retaliation against members of political opposition parties. The 2012 United States Department of State Human Rights Report for Ethiopia ("*2012 Human Rights Report*") documents that within the previous year government officials arrested or harassed numerous persons for criticizing the government, activities that in this country, would fall squarely within the protection of the First Amendment. *See Country Reports for Human Rights Practices for 2012, Ethiopia* at Section 2: Respect for Civil Liberties, ("The government attempted to impede criticism through various forms of intimidation, including detention of journalists and opposition

activists and monitoring and interference in the activities of political opposition groups. Some villagers continued to report local authorities threatened retaliation against anyone who reported abuses by security forces.") attached as Exhibit A to the Declaration of Cindy Cohn ("Cohn Decl.") filed herewith.[1] The *2012 Human Rights Report* also documents several instances in which authorities arrested and injured protestors within the country. *See id.* Members of opposing political parties were frequently terminated from government and teaching employment positions within the country. *See id.* at Section 3.

The government of Ethiopia has, in practice, severely limited electoral freedom. *See 2012 Human Rights Report* at Section 3: Respect for Political Rights. The ruling political party in Ethiopia has now been in power for over fifteen years, a feat made possible by stifling political opposition. In 2005, the country experienced the most democratic election cycle in the country's history; however, the election was followed by a violent post-election period in which over 200 protestors were killed and over 30,000 people were arrested. *See* Cohn Decl. Ex. B, Human Rights Watch, *One Hundred Ways of Putting Pressure: Violations of Freedom of Expression and Association in Ethiopia* at 14-15 (2010).[2]

After results indicated that political opposition parties had won an unprecedented number of seats in parliament, including a landslide victory in the capitol Addis Ababa, the Prime Minister of Ethiopia imposed a month-long ban on demonstrations on May 16, 2005. *See id.* at 13. Despite the ban, protests began to increase in numbers as Ethiopian citizens became alarmed at allegations that the vote counting process was rigged and delayed in favor of the ruling party. *See id.* The repression of the protests turned violent on June 8, 2005 when 36

---

[1] Available at http://www.state.gov/j/drl/rls/hrrpt/humanrightsreport/index.htm?year=2012&dlid =204120#wrapper.
[2] Available at http://www.hrw.org/sites/default/files/reports/ethiopia0310webwcover.pdf.

protestors were killed and several thousand were detained by the government's security forces, despite the fact that the Prime Minister would later admit that there was no indication that protestors were armed. *See id.* at 14. After a controversial process of ballot recounting that was "strongly criticized by European Union" observers, the election results were released in September and gave the ruling party a continued majority. *See id.* Following the announcement of what was called a "stolen election," the country experienced additional large-scale, violent protests throughout the month of November. *See id.* at 15.

In the most recent parliamentary election, the ruling political party won 545 of 547 available seats, to remain in power for a fourth consecutive five-year term. *See 2012 Human Rights Report* at Section 3. Although government restrictions severely limited the availability of independent observation of this most recent election, observers noted that "an environment conducive to free and fair elections was not in place prior to election day." *Id.* The *2012 Human Rights Report* notes that there was "ample evidence" that unfair government tactics, including "intimidation of opposition candidates and supporters," influenced the outcome of the election. *Id.* The European Union's observers noted a climate of "apprehension and insecurity" and concluded that the election fell short of international standard of transparency and fair play. *See id.*

Members of political opposition parties frequently complain of intense state surveillance and a pervasive culture of fear. *See* Cohn Decl. Ex. C, The Advocates for Human Rights, *Human Rights in Ethiopia: Through the Eyes of the Oromo Diaspora* (2009).[3] Ethiopians that are a part of the diaspora have reported widespread belief and experiences of being followed and having their communication monitored. *See id.* at 54. In a report by The Advocates for Human Rights,

---

[3] Available at:
http://www.theadvocatesforhumanrights.org/uploads/oromo_report_2009_color.pdf.

nearly every interviewed subject spoke of phone lines being tapped, email exchanges being delayed by several days, as well as the need to communicate in code with family members. *See id.* at 56.

**B.     The Defendant Has a Documented History of Targeting Family Members of the Diaspora Protest Movement.**

There is credible evidence that the Ethiopian government targets the families of political activists for abuse. A U.S. State Department *Country Report on Human Rights Practices* noted that Ethiopian government security forces routinely "detain[ed] family members of persons sought for questioning by the government." *See* Cohn Decl. Ex. D, *Country Reports for Human Rights Practices for 2005, Ethiopia* at Section 1: Respect for the Integrity for the Human Person (2006);[4] *see also* Cohn Decl. Ex. E, *Country Reports for Human Rights Practices for 2007, Ethiopia* at Section 1: Respect for the Integrity for the Human Person (2008) ("security forces entered homes and searched premises without warrants, took thousands of persons from their homes in the middle of the night without warrants, and often detained family members or other residents.").[5]

Additionally, there is credible evidence that the Ethiopian government targets the families of exiled political activists for abuse. In April 2009, the Ethiopian government arrested 32 military officers and civilians for involvement in the Ginbot 7 organization. *See* Cohn Decl. Ex. F, Amnesty International, *Dismantling Dissent: Intensified Crackdown on Free Speech in Ethiopia*, 7 (2011).[6] Among those arrested were several relatives of exiled members of political opposition parties. *See id.* Following the arrests, the exiled leader of the political opposition movement, Berhanu Nega, remarked on the arrests, stating that "This is a government that

---

[4] Available at: http://www.state.gov/j/drl/rls/hrrpt/2005/61569.htm.
[5] Available at: http://www.state.gov/j/drl/rls/hrrpt/2007/100481.htm.
[6] Available at: http://www.amnestyusa.org/sites/default/files/afr250112011en.pdf.

accuses your relatives for what you do. Whatever it is that you do. That is why Ato Tsige Andargachew's father is in prison. Maybe my cousin is in prison for that same reason." Cohn Decl. Ex. G, *Kin of Exiled Ethiopian Opposition Leaders Charged in Coup Plot*, Voice of America (Nov. 2, 2009).[7]

### C. Plaintiff John Doe, aka Kidane, Has Worked with a Diaspora Democratic Opposition Organization and Has Been Subjected to Unlawful Surveillance by the Defendant, the Ethiopian Government.

Plaintiff John Doe, aka Kidane, is an Ethiopian-born citizen of the United States. Complaint, ¶¶ 18-19. Mr. Kidane is one of several siblings in his family. Kidane Decl. at ¶ 2. Mr. Kidane lived in Ethiopia until the early 1990s, during which time he visited the United States on vacation. *Id.* at ¶¶ 2-3. While in the U.S., the political situation in Ethiopia changed rapidly, and Mr. Kidane was fearful to return to the country. *Id.* He thus filed for, and was quickly granted, asylum to remain in the U.S. Mr. Kidane has subsequently lived in the U.S. and obtained U.S. citizenship. *Id.* at ¶ 4. Many of Mr. Kidane's siblings and extended family continue to live in Ethiopia to the present day. *Id.* at ¶ 10.

Approximately five years ago, Mr. Kidane began to associate with a number of exiled Ethiopian democracy activists. *Id.* at ¶ 5. In 2005 there was a brief opportunity for a democratic opposition party to come into power. The opposing party was elected by the people in a landslide victory; however, the government of Ethiopia refused to recognize the results and arrested the members of the opposing party.

Following these events, an organization was formed outside of Ethiopia within the diaspora community in order to protest abuses by the Ethiopian government. The organization came to be known as "Ginbot 7," a reference to the month and date of the repressed election.

---

[7] Available at: http://www.voanews.com/content/a-13-2009-04-27-voa53-68733322/357755.html.

Ginbot 7 has subsequently organized a democratic opposition to the Ethiopian government, and operates as way for members of the diaspora movement to protest against the abuses of Ethiopian government in a collective fashion. *Id.* at ¶ 8.

Mr. Kidane is not a leader of Ginbot 7 nor is he a formal member of the organization. *Id.* at ¶ 9. Mr. Kidane has provided technical support and assistance to the organization for the past few years. *Id.* During all such times, Mr. Kidane has communicated via the pseudonym of "Kidane" in order to protect himself and members of his family from retaliation from the Ethiopian government. *Id.*

As explained in detail in his Complaint, in late October 2012 Mr. Kidane's personal computer was infected with a computer program known as FinSpy. FinSpy is a part of the FinFisher line of products, a set of surveillance software marketed by Gamma International, Ltd. Gamma states that "FinFisher solutions are sold to governmental agencies only." [8] *See* Complaint, Exhibit A. The Ethiopian government has been documented as having employed the FinSpy program. *See* Cohn Decl. Ex. H, Morgan Marquis-Boire, *For Their Eyes Only: The Commercialization of Digital Spying* (2013).[9]

The FinSpy program was active on Mr. Kidane's personal computer for at least four and a half months. Complaint, ¶¶ 55-77. During this period, the Ethiopian government had unlimited access to Mr. Kidane's computer. *Id.* A subsequent analysis of the computer program shows that the Ethiopian government made surreptitious audio recordings of dozens of Mr. Kidane's Skype Internet phone calls, recorded portions or complete copies of a number of emails sent by Mr.

---

[8] FinFisher GmbH, http://www.finfisher.com/FinFisher/products_and_services.html (last visited February 3, 2014).
[9] Available at https://citizenlab.org/storage/finfisher/final/fortheireyesonly.pdf.

Kidane, and recorded a web search related to the history of sports medicine, conducted by Mr. Kidane's son for his ninth grade history class. *Id.*, ¶¶ 4, 55-77.

## II.      ARGUMENT

Although Rule 10(a) of the Federal Rules of Civil Procedures requires that the complaint "include the names of all the parties," courts within this Circuit commonly grant plaintiffs permission to proceed via pseudonym in instances in which the underlying claims carry a risk of physical violence as retaliation, especially when such risk extends to third parties not participating in the legal proceeding. *See, e.g., Yaman v. U.S. Dep't of State*, 786 F. Supp. 2d 148, 153 (D.D.C. 2011); *Nat'l Ass'n of Waterfront Employers v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008). As Mr. Kidane has alleged sufficient facts to indicate that both he and members of his family would be potentially subject to physical harm in retaliation for bringing forth this complaint, this Court is justified in allowing the Plaintiff to proceed via a pseudonym.

It is "within the discretion of the district court" to grant a plaintiff's request to proceed pseudonymously. *See Nat'l Ass'n of Waterfront Employers*, 587 F. Supp. at 99; *U.S. v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995). Pseudonymous litigation has been permitted in "cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Nat'l Ass'n of Waterfront Employers*, 587 F. Supp. at 99-100 (citing *Doe v. Frank*, 951 F.2d 320, 322–23 (11th Cir. 1992)). In contrast, pseudonymous litigation is to be denied in cases where the plaintiff "merely cites personal embarrassment as the basis of the need for confidentiality." *Id*; *see also Qualls v. Rumsfeld*, 228 F.R.D. 8, 12 (D.D.C. 2005).

To determine whether it is proper to allow a plaintiff to proceed via a pseudonym, courts must balance the plaintiff's interest and need to proceed pseudonymously against the public's

interest in open proceedings and prejudice to the defendant. Courts in the D.C. Circuit have adopted a five-factor test to make this consideration, which considers

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party; and (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id.; see also Doe v. Von Eschenbach,* CIV.A.06 2131 RMC, 2007 WL 1848013 (D.D.C. June 27, 2007).

For the purposes of this motion, this Court need only establish that the Plaintiff has put forth specific evidence tending to show that disclosure of the personally identifiable information has the potential to place him at risk of physical and emotional harm.

In *Yaman v. U.S. Dep't of State*, 786 F. Supp. 2d 148, 153 (D.D.C. 2011), this District Court was faced with two minor plaintiffs who sought to proceed anonymously and without disclosing their addresses. In that case, an adult parent and her two minor daughters brought suit against the government, challenging an administrative decision that would have denied the children unrestricted U.S. passports. *Id.* at 150. In order to protect the children's privacy from the public, as well as to ensure their safety from their abusive father, plaintiffs requested permission to proceed under pseudonyms. *Id.*

The Court found that the plaintiffs satisfied each of the factors in favor of pseudonymity: the request was not to prevent mere embarrassment, there was a real risk of harm both to plaintiffs and to innocent third-parties, the privacy and safety of minors was at stake, the action was against a governmental party, and there was no risk of unfairness to the defendant. *Id.* Specifically, the Court found that it "need not determine whether the accusations against [the

plaintiff] are true; it is sufficient that plaintiff has presented specific evidence tending to show that disclosure of . . . identifying information . . . has the *potential* to place [plaintiffs] at grave risk of physical and emotional harm." *Id.* at 153 (emphasis in original).

Applying these factors to the case at hand, this Court should permit the Plaintiff to proceed via pseudonym. Mr. Kidane has alleged facts that show that he is seeking to proceed pseudonymously not to avoid mere annoyance or criticism, but to protect himself and his family, including minor children, from a very real risk of physical and emotional harm. *See* Kidane Decl. at ¶¶ 1-11. As recognized by the U.S. State Department, Defendant here has an established record of human rights abuse, particularly against individuals that it identifies with political opposition. *See Country Reports for Human Rights Practices for 2012, Ethiopia* at Section 2: Respect for Civil Liberties. If Mr. Kidane's true name were to be revealed in connection with the allegations in his complaint, there is a significant and real risk that he and his family, both in the United States and in Ethiopia, would be put at risk of similar retaliatory harm by the Ethiopian government. Additionally, Mr. Kidane is has a real concern that members of the Ethiopian diaspora who support the government of Ethiopia in its actions against the democratic opposition pose a further risk of to him and his family. Kidane Decl. at ¶ 6.

Furthermore, the revelation of Mr. Kidane's true identity would put innocent third parties—his family members—at risk for physical retaliatory violence. Much of Mr. Kidane's family, including several of his siblings, currently resides within Ethiopia. Kidane Decl. at ¶ 10. Mr. Kidane's family members are not involved in the democratic opposition movement, and they themselves are unaware of Mr. Kidane's own work with the diaspora. *Id.* Exposing Mr. Kidane's true identity in connection with this lawsuit would potentially bring dozens of innocent third parties unwillingly into an already heated and at times violent conflict with the Ethiopian

government. As such, Mr. Kidane's true identity should be reserved by this Court by allowing his use of pseudonym in this litigation.

Additionally, while Mr. Kidane himself is not a minor, several of his family members are. *Id.* at ¶ 11. When the interests of children are at stake, courts are more inclined to grant protections relating to a plaintiff's identity. *See Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006). Revelation of Mr. Kidane's true identity could potentially put his children, and other children in his family here and in Ethiopia, at risk of grave emotional harm as well as physical retaliation, thereby further indicating the need for Mr. Kidane to maintain a pseudonym in this litigation.

In the D.C. Circuit, a plaintiff proceeding against a government actor is a factor in favor of allowing pseudonymous litigation. *See Von Eschenbach*, 2007 WL 1848013 at *2 ("When a plaintiff challenges the government or government activity, courts are more like[ly] to permit plaintiffs to proceed under a pseudonym than if an individual has been accused publicly of wrongdoing.") (citing *Yacovelli v. Moeser*, 2004 WL 1144183 (M.D.N.C. May 20, 2004)). Mr. Kidane's complaint is against a government entity, in this case a foreign sovereign; the named defendant is the country of Ethiopia. As such, this consideration weighs in favor of granting Mr. Kidane's request to proceed via a pseudonym.

Finally, the risk of unfairness to the opposing party by allowing Plaintiff to proceed via pseudonym is slight. Mr. Kidane's Complaint does not contain any allegations would necessitate analysis of Mr. Kidane's identity. *See Von Eschenbach*, 2007 WL 1848013 at *3 (noting that class action lawsuits raise particular concerns for pseudonymous plaintiffs due to the court's need to assess the plaintiff's ability to properly represent the entire class). Additionally, should the Court so require, Plaintiff is willing to disclose his true name to the Court for *in camera*

review. The Defendant has already, by its actions, made clear that it does not value Mr. Kidane's privacy; it wiretapped his most private communications and spied on the computer activity of Mr. Kidane's family, including his minor children, for more than four months. Complaint, ¶¶ 55-77. Thus, it would be especially troubling if this Court were to force Mr. Kidane to further breach his own privacy by disclosing his name to a government intent on spying on him, and to the public as a condition of seeking redress for those harms.

As it is the practice of courts within this District to allow plaintiffs to proceed pseudonymously in instances where they face a threat of physical or mental harm as a retaliatory result of commencing the lawsuit, Mr. Kidane respectfully requests that this Court grant this motion and give Plaintiff leave to proceed with the pseudonym of either "John Doe" or "Kidane."

## III.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to Proceed in Pseudonym should be granted and Plaintiff should be permitted to use either the name of "John Doe" or "Kidane" as Plaintiff's name in the caption of the case, and to list Plaintiff's counsel's address as the Plaintiff's address in the Court's records.

Dated:  February 13, 2014

Respectfully submitted,

Mitchell L. Stoltz (DC SBN 978149)
Cindy Cohn (*pro hac* pending)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA  94109
Tel.: (415) 436-9333
Fax: (415) 436-9993
mitch@eff.org

Richard M. Martinez (*pro hac* pending)
Samuel L. Walling (*pro hac* pending)
Mahesha P. Subbaraman (*pro hac* pending)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
Tel.: (612) 349-8500
Fax: (612) 339-4181
rmmartinez@rkmc.com

Counsel for Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE,                                          ) | |
|                                                    ) | Civil No.: _____ |
|                          Plaintiff,                ) | |
|                                                    ) | |
|               v.                                   ) | |
|                                                    ) | |
| FEDERAL DEMOCRATIC REPUBLIC OF   ) | |
| ETHIOPIA,                                          ) | |
|                                                    ) | |
|                          Defendant.                ) | |
|                                                    ) | |

## ORDER

Upon consideration of the Motion to Proceed With Pseudonym, filed on behalf of Plaintiff, John Doe, on XXX, XX, 2013, and all papers filed in support of or in opposition thereto, it be and is hereby

**ORDERED** that the Motion for Leave to Proceed in Pseudonym, filed on behalf of Plaintiff, John Doe, is **GRANTED**; and is further

**ORDERED** that the Plaintiff shall be exclusively referred to by either his pseudonym of "John Doe" or "Kidane" in all papers and any other fillings in this matter, and Plaintiff shall be permitted to list his address as the address of his attorney's office in any papers filed with the Court.


**IT IS SO ORDERED.**


_____               _____
DATED                                   UNITED STATES DISTRICT JUDGE


1