## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **JOHN DOE, a.k.a. KIDANE** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 1:14-cv-00372-CKK** |
| | ) |
| **FEDERAL DEMOCRATIC** | ) |
| **REPUBLIC OF ETHIOPIA** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |
| | ) |

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULES 12(b)(1) and 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Robert P. Charrow (DC 261958)
Thomas R. Snider (DC 477661)
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
Tele: 202-533-2396; Fax: 202-261-0164
Email: charrowr@gtlaw.com;
snidert@gtlaw.com

Counsel for Defendant Federal Democratic
Republic of Ethiopia

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT. ...........................................................1

ARGUMENT ........................................................................................................5

I.   PLAINTIFF CONCEDES THAT THE ENTIRE TORT DID NOT OCCUR IN THE
     UNITED STATES AND THEREFORE, UNDER THE LAW OF THIS CIRCUIT,
     ETHIOPIA'S IMMUNITY REMAINS INTACT ..............................................................5

II.  SPYING IS A DISCRETIONARY FUNCTION AND, THEREFORE, THE TORT
     EXCEPTION DOES NOT APPLY ..........................................................................10

III. THE TORT EXCEPTION DOES NOT APPLY TO TORTS THAT INVOLVE, AS
     HERE, TRICKERY OR DECEIT. .........................................................................11

IV.  PLAINTIFF CONCEDES THAT THE TORT EXCEPTION DOES NOT APPLY TO
     HIS CLAIM FOR STATUTORY DAMAGES. ..............................................................11

V.   DEFENDANT HAS NOT AND CANNOT VIOLATE THE INTERCEPTION
     PROVISION OF THE WIRETAP ACT .....................................................................12

     A.   A Foreign State Is Not a "Person" Within the Meaning of the Wiretap Act. ........12

     B.   Plaintiff Has Failed to Allege An Interception ......................................................15

VI.  PLAINTIFF HAS FAILED TO ALLEGE A VIOLATION OF INTRUSION UPON
     SECLUSION ..................................................................................................15

     A.   Plaintiff Has Failed to Plead the Requisite Intent. .................................................15

     B.   Intrusion Upon Seclusion is Preempted. .................................................................17

VII. PLAINTIFF CONCEDES THAT HE IS NOT ENTITLED TO A JURY TRIAL OR TO
     DECLARATORY RELIEF, AND THE FSIA FORECLOSES INJUNCTIVE
     RELIEF. .....................................................................................................18

CONCLUSION .....................................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Adams v. City of Battle Creek*,
250 F.3d 980 (6th Cir. 2001). ....................................................................................14

*Agudas Chasidei Chabad of U.S. v. Russian Federation*,
528 F.3d 944 (D.C. Cir. 2008). ....................................................................................5

*Antares Aircraft L.P. v. Federal Republic of Nigeria*,
1991 WL 29287 (S.D.N.Y. Mar. 1, 1991). ..................................................................7

*Asociacion de Reclamantes v. United Mexican States,*
735 F.2d 1517 (D.C. Cir. 1984). ..........................................................................6, 7, 9

*Bailer v. Erie Ins. Exch.*,
344 Md. 514, 687 A.2d 1375 (1997). ..........................................................................16

*Baska v. Scherzer*,
283 Kan. 750, 156 P.3d 617 (2007). ...........................................................................16

*Black v. Sheraton Corp. of Am.,*
564 F.2d 531 (D.C. Cir. 1977). ...................................................................................11

*Bourne v. Mapother & Mapother, P.S.C.*,
2014 WL 555130 (S.D. W.Va. Feb. 12, 2014). ..........................................................16

*Cabiri v. Gov't of the Republic of Ghana*,
165 F.3d 193 (2d Cir. 1999).........................................................................................11

*Catawba Cnty., N.C. v. EPA*,
571 F.3d 20 (D.C. Cir. 2009)........................................................................................14

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983).........................................................................................................18

*Coleman v. Alcolac, Inc.,*
888 F.Supp. 1388 (S.D.Tex.1995). ...............................................................................6

*Collier v. District of Columbia*,
2014 WL 2256908 (D.D.C. May 30, 2014). ................................................................16

*Elam v. Kansas City Southern Railway Co.*,
635 F.3d 796 (5th Cir. 2011). ......................................................................................17

*F.A.A. v. Cooper*,
566 U.S. ___, 132 S. Ct. 1441 (2012)................................................................11, 12

*Four Corners Helicopters, Inc. v. Turbomeca S.A.*,
677 F.Supp. 1096 (D. Col.1988).........................................................................6, 7

*Gonzaga Univ. v. Doe*,
536 U.S. 273 (2002)................................................................................................13

*Gubtch v. Fed. Republic of Germany*,
444 F.Supp.2d 1 (D.D.C. 2006)...............................................................................5

*Haven v. Polska*,
215 F.3d 727 (7th Cir. 2000)..................................................................................12

*In re Sedco, Inc.*,
543 F.Supp. 561 (S.D. Tex. 1982).......................................................................6, 9

*Jerez v. Republic of Cuba*,
777 F.Supp.2d 6 (D.D.C. 2011)...............................................................................6

*Keller v. Central Bank of Nigeria*,
277 F.3d 811 (6th Cir. 2002)...................................................................................5

*Lane v. Pena*,
518 U.S. 187 (1996)................................................................................................11

*Letelier v. Republic of Chile*,
488 F. Supp. 665 (D.D.C. 1980)..............................................................................9

*Liu v Republic of China*,
892 F.2d 1419 (9th Cir. 1989)..............................................................................8, 9

*Lugar v. Edmondson Oil Co.*
457 U.S. 922 (1982)................................................................................................13

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)................................................................................................18

*Merrell Dow Pharmaceuticals, Inc. v. Thompson*,
478 U.S. 804 (1986)...........................................................................................4, 18

*Metropolitan Life Ins. Co. v. Taylor*,
481 U.S. 58 (1987)..................................................................................................18

*O'Bryan v. Holy See*,
556 F.3d 361 (6th Cir. 2009). ........................................................................6, 9, 10

*Olsen v. Gov't of Mexico*,
729 F.2d 641 (9th Cir. 1984). ..............................................................................8, 9

*Pascale v. Carolina Freight Carriers Corp.*,
898 F. Supp. 276 (D.N.J. 1995). .............................................................................15

*Persinger v. Islamic Republic of Iran*,
729 F.28 835 (D.C. Cir. 1984) ................................................................................6

*Price v. Socialist People's Libyan Arab Jamahiriya*,
294 F.3d 82 (D.C. Cir. 2002). ................................................................................14

*Riegel v. Medtronic, Inc.*,
552 U.S. 312 (2008)................................................................................................17

*Ruffin v. United States*,
642 A.2d 1288 (D.C. 1994). ..................................................................................16

*Rusello v. United States*,
464 U.S. 16 (1982)..................................................................................................14

*Samuels v. District of Columbia*,
770 F.2d 184 (D.C. Cir. 1985). ..............................................................................13

*Sanders v. Robert Bosch Corp.*,
38 F.3d 736 (4th Cir. 1994). ..................................................................................15

*United States v. Cotroni*,
527 F.2d 708 (2d. Cir. 1975)....................................................................................7

*United States v. Nelson*,
837 F.2d 1519 (11th Cir. 1988) ...............................................................................8

*United States v. Rodriguez*,
968 F.2d 130 (2d. Cir. 1992)....................................................................................8

*Vermont Agency of Natural Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000)..........................................................................................13, 14

*Von Dardel v. Union of Soviet Socialist Republics*,
736 F. Supp. 1 (D.D.C. 1990). .................................................................................6

iv

*White Stallion Energy Ctr., LLC v. EPA*,
748 F.3d 1222 (D.C. Cir 2014). ...................................................................................................14

<u>Statutes</u>

18 U.S.C. § 2510....................................................................................................3, 8, 13, 14

18 U.S.C. § 2511...............................................................................................3, 4, 12, 13, 14

18 U.S.C. § 2518.........................................................................................................................17

18 U.S.C. § 2520....................................................................................................3, 13, 14

42 U.S.C. § 1983.................................................................................................................13

28 U.S.C. § 1605(a). .........................................................................................................11

National Security Act of 1947, Pub. L. No. 80-253, 61 Stat. 495. ...........................................2, 10

<u>Rules</u>

Fed. R. Civ. P. 8(a). ...............................................................................................................3

Fed. R. Civ. P. 12(b)(1)............................................................................................................3

<u>Other Authorities</u>

Ronald Dworkin, THE MODEL OF RULES I (1967). .........................................................7

H.L.A. Hart, THE CONCEPT OF LAW (1961). ................................................................7

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULES
12(b)(1) and 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

**Introduction & Summary of Argument:**

In this Foreign Sovereign Immunities Act ("FSIA") case, Plaintiff alleges that the Federal

Democratic Republic of Ethiopia ("Ethiopia") intentionally infected from Ethiopia a friend's

home computer with a virus and that that virus subsequently infected Plaintiff's computer after

Plaintiff opened a document that he received from that friend, believing the document to be

secure.  Plaintiff further alleges that the computer virus, which was controlled by government

employees in Ethiopia, enabled those employees in Ethiopia to read emails and other documents

that he had received or produced on his home computer.  As a result, he filed a two-count

complaint alleging that Ethiopia violated the Federal Wiretap Act and committed the common

law tort of intrusion upon seclusion.

Ethiopia  moved to dismiss the First Amended Complaint ("FAC") because the tort

exception to sovereign immunity does not apply for five reasons:  (1) the alleged tort did not

occur in its entirety in the United States, as required by the law of this Circuit; (2) the alleged

spying is a discretionary activity and, therefore, not subject to the tort exception; (3) the tort

exception does not apply to conduct involving deceit or trickery, as is alleged to be the case here;

(4) the tort exception does not apply to "statutory damages," as claimed here; and (5) the tort

exception does not apply because the FAC fails to allege a violation of either the Wiretap Act or

the common law tort of intrusion upon seclusion.  The interception provision of the Wiretap Act

alleged to have been violated by Defendant only applies to "persons," and a foreign state is not a

"person."  Moreover, the FAC fails to allege an "interception," as that term has been defined by

the courts.  Correspondingly, Plaintiff does not allege that Defendant intentionally "intruded"

1

upon Plaintiff's seclusion, as required under Maryland law.  To the contrary, the FAC alleges that Defendant intended to intrude upon the seclusion of another party not involved in this case. Finally, common law torts arising out of the same conduct proscribed by the Wiretap Act are preempted by that Act.

It is against this backdrop that Plaintiff concedes, as he must, that all of the human acts and the intent underlying both of the alleged torts occurred in Ethiopia.  Plaintiff, relying on cropped passages from a D.C. Circuit case and a Ninth Circuit case argues that the non-human aspects of the tort occurred in the United States and that should be sufficient.  The law of this Circuit is to the contrary--the entire tort must occur in the Unites States.  Non-human conduct is simply not relevant.  This is not disputed by Plaintiff and that should end this matter.

Plaintiff also argues that "spying" is not a discretionary function because wiretapping is a wrong under United States law.  Whether certain actions are "wrong" under United States law is not the test for the discretionary function exemption.  If it were, the exemption would never apply since every tort, by definition, is "a civil wrong."  Moreover, whether judged by U.S. or international law, spying overseas, which is what is alleged to have occurred here, is perfectly legal and quintessentially discretionary.  If spying overseas were otherwise, the Central Intelligence Agency would lack a legal foundation.  *See* National Security Act of 1947, § 102.

Plaintiff alleges that Defendant has attempted to "recast" his complaint by alleging that the tortious conduct involves deception or trickery; torts that involve deception fall outside the tort exception to sovereign immunity.  However, as Plaintiff begrudgingly acknowledges, the word "trick" is the Plaintiff's word, not the Defendant's invention.  *See* FAC ¶ 41 ("In the case of the image, the target is tricked into opening the executable and is thus infected."); Exh. B at 8 (Doc. # 26 at 38) ("This appears to be an attempt to trick the victim into believing the opened file

is not malicious.").  Recognizing that allegations of deception are not actionable, it is Plaintiff who is running from his own words.

Defendant also sought dismissal under Rule 12(b)(1) because the tort exception only applies, as relevant here, to claims for money damages for "personal injury."  Plaintiff, in his Wiretap Act count, is seeking "statutory damages," rather than actual damages.  Plaintiff does not take issue with this argument and, therefore, concedes that statutory damages are not authorized by the tort exception.  As such, the Wiretap Act claim must be dismissed.  As to the common law claim, Plaintiff belatedly alleges that he has suffered mental distress as a result of the alleged computer hacking, but fails to provide any detail in his FAC as required by Rule 8(a).  The original complaint contained no allegation that he suffered mental distress.  Plaintiff does not address this issue other than arguing that mental distress is a form of personal injury.  Given that the burden to prove facts necessary to establish jurisdiction is on the plaintiff, and given that a bald assertion of an allegation without more is insufficient to carry that jurisdictional burden, Plaintiff's common law claim does not satisfy the tort exception.

Ethiopia argued that to satisfy the tort exception, Plaintiff must plead a tort.  The provision of the Wiretap Act which forms the basis of Plaintiff's first count, only applies to "persons," and a foreign state is not a person.  Instead of directly responding, Plaintiff sets up two straw men.  First, he argues that many courts have held that domestic governmental units, *e.g.*, municipalities, are "persons" within the meaning of sections 2510 and 2511.  However, those cases are irrelevant because section 2510 expressly defines "person" to include political units within a State of the Union; that definition, though, does not include foreign governments.  Second, he argues that a foreign state is an entity and that section 2520 permits a civil action against an entity.  The only problem there is that section 2520 creates no independent causes of

3

action; the sole statutory cause of action relied upon by Plaintiff is section 2511(1)(a), which is limited to "persons." The Wiretap Act also requires contemporaneous transmission; this did not occur here. Rather, the information, according to the FAC, was copied onto a file on Plaintiff's own computer and then, only later, transmitted to Ethiopia. Plaintiff's significant discussion of why as a matter of policy he ought to be entitled to proceed under the Wiretap Act underscores the fact that the words of the statute cannot carry the weight of his claims.

Plaintiff has not and cannot adequately plead a claim for intrusion upon seclusion for two reasons. First, the requisite intent is lacking. Plaintiff admits that he was not the intended victim of the hackers, but rather was collateral damage. Since he was not the alleged intended victim, Defendant had no intent to invade Plaintiff's computer. And absent that intent, there is no tort. The doctrine of transferred intent does not apply to invasion of privacy, or to an act and an intent that are not simultaneous, as is the case here. Also, the Wiretap Act expressly preempts common law remedies. Plaintiff responds by arguing that courts have held that the Act does not completely preempt state law. Plaintiff is confused. Complete preemption is a jurisdictional concept channeling cases automatically into federal court and ousting state courts of jurisdiction. Most federal statutes that preempt state laws involve "ordinary preemption" and do not "completely preempt" state law. *See Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986) (holding that Food, Drug, and Cosmetic Act § 521, which preempts certain state laws, does not completely preempt state laws).

Finally, Plaintiff argues that he has discharged his burden of proof and that the burden has shifted to Ethiopia to demonstrate that it is entitled to immunity. The Plaintiff confuses the burden of proof with the burden of producing evidence. "The party claiming FSIA immunity bears the initial burden of proof of establishing a prima facie case that it satisfies the FSIA's

4

definition of a foreign state; once this prima facie case is established, the burden of production

shifts to the non-movant to show that an exception applies." *Keller v. Central Bank of Nigeria*,

277 F.3d 811, 815 (6th Cir. 2002).   The party claiming immunity under FSIA retains the burden

of persuasion throughout this process. *See id*.  The burden of proof, though, is only relevant

where there are factual disputes.   Here, aside from one pleading issue, Ethiopia has, for purposes

of this motion, not challenged the factual accuracy of the FAC.  Ethiopia does challenge the

adequacy of Plaintiff's belated claim that he now suffers from emotional distress.   In the Motion

to Dismiss, Ethiopia challenged Plaintiff to provide additional detail to flesh out this assertion,

which is necessary to establish jurisdiction for Plaintiff's invasion of seclusion claim.   Under the

law of this Circuit, though, "the plaintiff must, on a challenge by the defendant, present adequate

supporting evidence." *Agudas Cahsidei Chabad of United States v. Russian Fed*., 528 F.3d 934,

940 (D.C. Cir. 2008).   The burden to produce evidence thus shifted to Plaintiff to provide

additional detail.  None was provided and, therefore, Plaintiff has not met his jurisdictional

burden.

**Argument**:

I.      **Plaintiff Concedes That the Entire Tort Did Not Occur in the United States and
        Therefore, Under the Law of this Circuit, Ethiopia's Immunity Remains Intact**

        Under the law of this and many other Circuits, the FSIA's tort exception is only satisfied

if the entire tort occurred in the United States. *See e.g., Asociacion de Reclamantes v. United

Mexican States*, 735 F.2d 1517, 1524–25 (D.C. Cir. 1984); *Gubtch v. Fed. Republic of Germany*,

444 F.Supp.2d 1, 11 (D.D.C. 2006) ("In addition, both the tortious act and the injury must occur

in the United States for this exception to apply").   Plaintiff never directly challenges this

statement of the law of this Circuit, but instead argues that "[t]he FSIA tort exception applies

whenever the tort's 'essential locus'—i.e., the injury and the act that proximately causes that

5

injury—occurs in the United States."  Plaintiff's Opposition ("Opp.") at 15.  From this, Plaintiff

ordains a so-called "essential locus" test and then applies this new test to the facts as alleged in

the FAC.  The only problem is that the "essential locus" test is not used in this or any other

circuit.  Specifically, the Court in *Asociacion de Reclamantes* stated that

> [e]ven if the allegedly wrongful failure to compensate had the effect of
> retroactively rendering the prior acts on United States soil tortious, <u>at the very
> least the entire tort would not have occurred here</u>, *see In re Sedco, Inc*., 543
> F.Supp. 561, 567 (S.D.Tex.1982) ("<u>the tort, in whole, must occur in the United
> States</u>"), and indeed we think its essential locus would remain Mexico.

*Asociacion de Reclamantes,* 735 F.2d at 1525 (emphasis supplied).  Under *Asociacion* and its

progeny the "entire tort" must occur in the United States.  Plaintiff does not address these cases

other than arguing that the law of the Circuit should be ignored because in those cases, the torts

occurred overseas.  But that is precisely the point: the Courts have consistently held that the

entire tort must occur in the United States to satisfy the exception.  Any case in which some or

all of the tort occurred overseas is, by definition, a tort that is not subject to the FSIA's tort

exception, even though the injury may have occurred in the United States.  *See Von Dardel v.*

*Union of Soviet Socialist Republics*, 736 F. Supp. 1, 7 (D.D.C. 1990); *Asociacion de*

*Reclamantes v. United Mexican States*, 735 F.2d at 1525 ("The tort, in whole, must occur in the

United States") (quoting *In re Sedco, Inc*., 543 F. Supp. 561, 567 (S.D. Tex. 1982)); *Persinger v.*

*Islamic Republic of Iran*, 729 F.2d 835, 842 (D.C. Cir.1984), *cert. denied*, 469 U.S. 881 (1984)

(same): *Jerez v. Republic of Cuba*, 777 F.Supp.2d 6, 25 (D.D.C. 2011) (same); *see also O'Bryan*

*v. Holy See*, 556 F.3d 361, 382 (6th Cir. 2009) (where the Sixth Circuit "join[ed] the Second and

D.C. Circuits in concluding that in order to apply the tortious act exception, the 'entire tort' must

occur in the United States."); *Coleman v. Alcolac, Inc.,* 888 F.Supp. 1388, 1403 (S.D.Tex.1995)

(exception not applicable because alleged tort "did not occur wholly in this country"); *Four*

6

*Corners Helicopters, Inc. v. Turbomeca S.A.*, 677 F.Supp. 1096, 1102 (D. Col.1988) ("It is clear

that in order for the exception to apply, the entire tort must have occurred in the United States");

*Antares Aircraft L.P. v. Federal Republic of Nigeria*, 1991 WL 29287 (S.D.N.Y. Mar. 1, 1991)

("It is well-recognized that for the non-commercial tort exception to apply, the entire tort must

occur in the U.S.") (*aff'd on other grounds*, 948 F.2d 90 (2d Cir. 1991), *vacated mem.*, 505 U.S.

1215 (1992), *aff'd on other grounds*, 999 F.2d 33 (2d Cir. 1993)).

Rather than confronting the law of the Circuit, Plaintiff presents the law as he believes it

ought to be, rather than as it is.  While the dichotomy between the law as it is and the law as it

ought to be has been the subject of lively debates in the jurisprudential literature, it is decidedly

out of place when it comes to applying the law of the Circuit to resolve whether a district court

has subject matter jurisdiction over a particular claim.  *Compare* H.L.A. Hart, THE CONCEPT OF

LAW (1961) *with* Ronald Dworkin, THE MODEL OF RULES I (1967).

Under Plaintiff's view of the law, the tort exception ought to apply even if most of the

tort occurs overseas.   In an attempt to give his "ought" a bit more of the "is," Plaintiff relies on a

series of non-FSIA wiretap cases and three FSIA cases--two from the Ninth Circuit and one from

this Court antedating this Circuit's ruling in *Asociacion de Reclamantes v. United Mexican States*

and its progeny.  The various wiretap cases are not instructive.

The concept that the entire tort must occur in the United States is an outgrowth of the

Supreme Court and the Circuit Courts' interpretation of the tort exception in the FSIA.  Cases

dealing with other statutory regimes are therefore not relevant.  For example, Plaintiff cites

*United States v. Cotroni,* 527 F.2d 708, 711 (2d. Cir. 1975), for the proposition that "the situs of

the Wiretap Act violation is the place where the interception occurs."  Opp. at 15.  But, that is

not what *Cotroni* says.  *Cotroni* stands for the proposition that the Wiretap Act does not have

extraterritorial application, and it clarifies that whether the Wiretap Act applies depends on where the "interception" took place.  But, it neither interprets the term "interception," nor defines the "situs" of a Wiretap Act violation.  Correspondingly, in *United States v. Rodriguez*, 968 F.2d 130, 136 (2d. Cir. 1992), the Court found that because the definition of interception encompasses the "aural" acquisition of the contents of the communication, "the interception must also be considered to occur at the place where the redirected contents are first heard."  *United States v. Rodriguez*, 968 F.2d 130, 136 (2d. Cir. 1992).  The Court held that "there is no indication in the legislative history that [Congress] intended to extinguish the principle that the place where the contents of a wire communication are first to be heard and understood by human ears, other than those of the parties to the conversation, is the situs of an interception within the meaning of Section 2510(4)." *Id.*  Applying *Rodriguez* to the instant case, the situs of the interception was both in the United States, where Plaintiff contends FinSpy captured the contents of Plaintiff's communications, and Ethiopia, where the recordings allegedly were heard.  Thus, the tort was not "committed entirely" in the United States, and under the law of this Circuit, the tort exception cannot apply. *United States v. Nelson,* 837 F.2d 1519 (2d. Cir. 1992), is inapposite because it applies to determinations about whether a lawful warrant has been issued, not determinations about whether a tort exists.

Moreover, none of the three FSIA cases relied upon by Plaintiff does the trick:  none adopts the so-called "essential locus" test either.  The two Ninth Circuit cases, *Olsen v. Gov't of Mexico*, 729 F.2d 641, 646 (9th Cir. 1984) and *Liu v. Republic of China*, 892 F.2d 1419, 1434 (9th Cir. 1989), do not advance Plaintiff's novel "locus" theory.  In *Olsen,* decedents, who were imprisoned in Mexico, were being flown on a plane owned by the Mexican government to the United States where they could serve the remainder of their sentence.  En route from Mexico, the

8

plane, while attempting to land in the United States, crashed near San Diego, California.  The Court found that one complete tort--negligent piloting--occurred in the United States; the concept of the tort's locus was never mentioned by the court.  In *Liu,* plaintiff's husband was allegedly murdered in the United States by an employee of the Republic of China.  The entire tort occurred in the United States; the court applied the employee tort exception because it found that the employee had acted within the course and scope of his employ thereby satisfying the "employee" tort exception.  Here, plaintiff has not alleged that any Ethiopian employee acted in the United States as was the case in both *Olsen* and *Liu*.  Finally, Plaintiff invokes *Letelier v. Republic of Chile*, 488 F. Supp. 665 (D.D.C. 1980), but, again in that case the entire tort, a double assassination, was perpetrated in Washington, D.C. by agents of Chile.  Here, unlike in *Olsen*, *Liu* or *Letelier*, none of the acts occurred in the United States, no agent or employee of Ethiopia was physically present in the United States and none of the equipment was housed or operated in the United States.  Here, aside from the alleged injury, none of the allegedly tortious conduct occurred in this country.

Having been unable to find any FSIA case supporting his novel locus theory, Plaintiff is left to argue that this Court should ignore the *Asociacion de Reclamantes* Court's reliance on *In re Sedco,* because *Sedco* is 32 years old and comes from a court outside this district.  The fact that *Sedco* was cited with approval by this Circuit should end this matter; its age is not relevant. Finally, as an afterthought and in a footnote, Plaintiff suggests that *O'Bryan v. Holy See*, 556 F.3d 361 (6th Cir. 2009), is irrelevant because *"*Plaintiff brings no claims alleging negligent training or supervision in Ethiopia."  Opp. at 21, n. 37.  Under that constrained view, *Olsen* would not be relevant because Plaintiff brings no claims alleging negligent piloting.  *O'Bryan v. Holy See* involved torts that had their effect through employees in the United States, but the

negligent actions allegedly occurred in Vatican City.  The Sixth Circuit, relying on the Second

and D.C. Circuits, held that the entire tort must occur in the United States and, therefore,

dismissed the claims for negligent supervision or training.

Here, like in *Holy See*, all of the actors performed their allegedly tortious actions overseas

and even though those actions allegedly injured individuals in the United States, since the entire

tort did not occur in the United States the tort exception to sovereign immunity does not apply.

## II.    Spying is a Discretionary Function and, Therefore, the Torts Exception Does Not Apply

Actions that are discretionary are not subject to the tort exception to sovereign immunity.

Plaintiff argues that since wiretapping is a wrong and since no one has discretion to commit a

wrong, the discretionary function exemption cannot apply.  First, plaintiff's argument would read

the discretionary function exception out of the statute.  The only time the exception is relevant is

when a sovereign has allegedly committed a wrong.  If tortious activity is automatically deemed

non-discretionary, it would defeat the purpose of the exception.  Second, Plaintiff is correct in

noting that certain types of criminal activity, namely activities that violate universal norms, such

as murder and torture, cannot support a discretionary function exemption.  But, that is not what is

alleged here.  As even Plaintiff acknowledges, the legality of the activity is not the test, but rather

whether the activity violates universal norms.  Spying overseas is not viewed with the universal

scorn necessary to obviate the discretionary function exemption.  To the contrary, it is perfectly

proper under U.S. law for the United States to spy on another nation and to spy on the residents

of that other nation.  The Central Intelligence Agency is authorized by the National Security Act

of 1947, Pub. L. No. 80-253, 61 Stat. 495, to conduct, as appropriate, overseas intelligence

activities.  Thus, the actions that Plaintiff accuses Ethiopia of having undertaken, namely spying

abroad, is entirely proper under United States law.  Plaintiff has provided nothing to indicate that

Ethiopian law is to the contrary. Third, spying is inherently discretionary, a fact not contested by Plaintiff, especially whereas here, it is alleged to have occurred because of Plaintiff's friend's political views.

### III.   The Tort Exception Does Not Apply to Torts that Involve, as Here, Trickery or Deceit

Plaintiff alleges that his claims are not based on misrepresentation or deceit because neither of the torts he alleges requires him to prove misrepresentation or deceit as an element. That, however, is not the test.  Rather, one looks to the Plaintiff's complaint to assess whether "the wrongful acts alleged to have caused the injury" involve misrepresentations.  *Cabiri v. Gov't of the Republic of Ghana*, 165 F.3d 193, 200 (2d Cir. 1999).  Here, the cascade of events that Plaintiff alleges caused him injury was the result of trickery.  Indeed, spyware, by its very nature works only through trickery.  Plaintiff alleges that he was tricked into opening what appeared to be a benign document from a friend that contained the hidden spyware at issue. Plaintiff has pled trickery, a form of deceit, and he cannot now run from it.

Plaintiff, relying on *Black v. Sheraton Corp. of Am.*, 564 F.2d 531, 541 (D.C. Cir. 1977), a Federal Tort Claims Act ("FTCA") case involving improper government eavesdropping, suggests that because this case was permitted to proceed under the FTCA, then eavesdropping somehow does not involve "deceit."  However, there is nothing to indicate that plaintiff there ever alleged that he was deceived or tricked by the government; that is not the case here.  The issue of deceit was never raised by any of the parties or addressed by the court.  The case, while of historical interest as the last of the "Bobby Baker" cases, is irrelevant here.

### IV.   Plaintiff Concedes That the Tort Exception Does Not Apply to His Claim for Statutory Damages

The tort exception, as relevant here, only applies to claims for money damages "for personal injury or death."  § 1605(a)(5).  Exceptions to sovereign immunity are strictly construed.  *See F.A.A.*

*v. Cooper*, 566 U.S. ___, 132 S. Ct. 1441, 1448 (2012); *Lane v. Pena*, 518 U.S. 187, 192 (1996); *see also Haven v. Polska*, 215 F.3d 727, 731 (7th Cir. 2000) (noting that FSIA exceptions must be "narrowly construed" because they are "in derogation of the common law").  Here, Plaintiff "seeks statutory damages under the Wiretap Act." FAC at ¶ 12.  Plaintiff does not dispute this and therefore concedes that his claim for "statutory damages" is not cognizable under the tort exception to the FSIA.  Since a claim for "money damages" for "personal injury" is the only relevant remedy permitted under the tort exception and since Plaintiff is not claiming damages for "personal injury" under the Wiretap Act, the tort exception does not apply to his Wiretap Act claim.

**V.      Defendant Has Not and Cannot Violate the Interception Provisions of the Wiretap Act**

Plaintiff must demonstrate that defendant has committed a tort to sustain subject matter jurisdiction under the tort exception.  Plaintiff claims that defendant violated the "interception" provision of the Wiretap Act at 18 U.S.C. § 2511.  Indeed, Plaintiff's first cause of action is entitled "Violation of the Wiretap Act, 18 U.S.C. § 2511."

**A.      A Foreign State Is Not a "Person" Within the Meaning of the Wiretap Act**

In its Motion to Dismiss, Ethiopia argued that a foreign sovereign cannot violate 18 U.S.C. § 2511, because that section only applies to "persons" and a foreign sovereign is not a "person."

Section 2511 provides in relevant part as follows:

(1)      Except as otherwise specifically provided in this chapter any person who—

(a)      intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication

\*         \*         \*

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

Plaintiff argues that because section 2520, which authorizes a civil action for any violation of any provision of the Wiretap Act, uses the terms "person" or "entity," and since an entity can include a country, the Wiretap Act necessarily applies to Defendant.

The problem, though, is that section 2520 itself creates no substantive rights. Rather, it simply provides a cause of action to vindicate rights identified in other portions of the Wiretap Act, specifically communications "intercepted, disclosed, or intentionally used in violation of this chapter. " § 2520(a) (emphasis added). In this sense, § 2520 is like 42 U.S.C. § 1983. *See Gonzaga Univ. v. Doe,* 536 U.S. 273 (2002); *Lugar v. Edmondson Oil Co*., 457 US 922, 924 (1982); *Samuels v. District of Columbia*, 770 F.2d 184, 193 (D.C. Cir. 1985) ("By its terms, of course, [section 1983] does not create substantive rights; instead it provides an express federal remedy against state officials for deprivations of rights established elsewhere in federal law."). Thus, a court must look to the scope and nature of the specific substantive right Plaintiff accuses Defendant of violating to determine whether Plaintiff may assert that right against a foreign state. Here, Plaintiff accuses Ethiopia of violating the interception provision of the Wiretap Act, 18 U.S.C. §2511(1)(a), which, as noted above, prohibits "any person" from intentionally intercepting any wire, oral, or electronic communication. Thus, § 2511(1) protects only against actions taken by a "person" as defined in the statute, which does not include foreign states. Indeed, section 2510(6) defines the word "person" to mean "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." Conspicuously absent from this overarching definition is the phrase "foreign nation" or "foreign state." Giving the statute its plain meaning is consistent with the "longstanding interpretive presumption that 'person' does not include the sovereign." *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529

13

U.S. 765, 780-81 (2000); *see also Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 96 (D.C. Cir. 2002) ("[W]e hold that foreign states are not 'persons' protected by the Fifth Amendment.").

Instead of examining whether section 2511 encompasses a foreign state, Plaintiff string cites cases examining whether a city or municipality is "a political subdivision" of a State, as those terms are used in section 2511. *See, e.g., Adams v. City of Battle Creek*, 250 F.3d 980 (6th Cir. 2001); Opp. at 10-12. None of the cases in the string cite holds that a foreign state is a "person" within the meaning of either section 2510 or section 2511. Plaintiff goes on to argue that "this Court should follow those courts that have held that the legislative history supports constructing the statute to impose civil liability on governmental entities." Opp. at 13. But those courts were only examining whether section 2511 should be interpreted to reach U.S. municipalities and comparable domestic governmental units. We are unaware of any case holding that the term "person" under section 2511 includes a foreign sovereign and the Plaintiff has cited to none.

Finally, Plaintiff argues that the use of the words "person" and "entity" in section 2520 is dispositive because entity includes a governmental actor. However, as noted above, section 2510, which creates Plaintiff's cause of action, only uses the word "person." It does not use the word "entity." "Where Congress includes particular language [such as the word 'entity'] in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally…in the disparate inclusion or exclusion." *White Stallion Energy Ctr., LLC v. EPA.*, 748 F.3d 1222, 1238 (D.C. Cir. 2014) (quoting *Rusello v. United States*, 464 U.S. 16, 23 (1982)); *cf. Catawba Cnty., N.C. v. EPA*, 571 F.3d 20, 36 (D.C. Cir. 2009). Accordingly, Courts must assume that Congress intended to omit the word "entity" from section 2511.

14

**B.     Plaintiff Has Failed to Allege An "Interception"**

Defendant, in its motion to dismiss, noted that according to majority view, the interception provision of the Wiretap Act requires that the  interception of the communication occur at the same time as the transmission.  Here, Plaintiff argues that that is not the law and that interception can occur if a defendant records the conversation at the time it was occurring. Those cases though assume that the defendant recorded the conversation on some equipment installed by the defendant.  *See, e.g.*, *Sanders v. Robert Bosch Corp.*, 38 F.3d 736 (4th Cir. 1994) (defendant recorded using a "voice logger"); *Pascale v. Carolina Freight Carriers Corp.*, 898 F. Supp. 276 (D.N.J. 1995) (recording via "tape recording equipment" installed by the defendant). That is not the case here.  As alleged in the FAC, the Skype conversations at issue were recorded onto Plaintiff's own computer, just like any other temporary file, the only difference is that spyware sought to camouflage those temporary files so they could not be easily detected.  The information stored in those temporary files were subsequently allegedly transmitted to Defendant in Ethiopia, according to the FAC ¶ 10 ("FinSpy programs installed on the Kidane family computer in Maryland to create contemporaneous recording of his activities in Maryland, which the FinSpy programs then sent to the FinSpy Master server located in Ethiopia.").  Given that there was no simultaneous transmission and no recording on another device, there was no interception within the meaning of the Wiretap Act.

**VI.     Plaintiff Has Failed to Allege a Violation of Intrusion Upon Seclusion**

Ethiopia sought dismissal of count II, intrusion upon seclusion, on the grounds (i) that the FAC failed to allege the requisite intent and (ii) that tort was preempted by the Wiretap Act.

**A.     Plaintiff Has Failed to Plead the Requisite Intent**

Under Maryland law, the tort of intrusion upon seclusion occurs when

> [o]ne who *intentionally* intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

*Bailer v. Erie Ins. Exch.*, 344 Md. 515, 526, 687 A.2d 1375, 1380-81 (1997) (emphasis in original).

This tort requires that there be an intent to "intrude . . .upon the seclusion of another" with liability flowing in favor of the "the other for the invasion of his privacy."  Thus, the defendant's intended target of the intrusion must be the same as the party who is actually intruded upon.

Plaintiff responds by arguing that as long as Defendant intended to spy upon someone, that is all that is required.  *See* Opp. 14.  However, that assumes that the concept of transferred intent governs  intrusion upon seclusion, as pled in this case.  It does not.  First, Defendant is unaware of any reported case applying transferred intent to intrusion upon seclusion, and Plaintiff has pointed to none.  *See Bourne v. Mapother & Mapother, P.S.C.*, 2014 WL 555130 (S.D. W.Va. Feb. 12, 2014) (concluding that transferred intent does not apply to a claim for intentional infliction of emotional distress and finding it unnecessary to decide whether it applies to an invasion of privacy type tort).  Second, transferred intent is "the principle that one who intends to injure one person and instead injures a bystander is liable for an intentional tort against the injured person.  *See, e.g., Baska v. Scherzer*, 283 Kan. 750, 156 P.3d 617, 623, 628 (2007) (a plaintiff was injured when she stepped in the middle of a fist fight; while she was hit "unintentionally," transferred intent applied and her claim was for assault and battery); *see also Ruffin v. United States*, 642 A.2 1288, 1293 (D.C.1994) (transferred intent applies in context of criminal law)."  *Collier v. District of Columbia*, CV 13-1790 (RMC), 2014 WL 2256908 (D.D.C. May 30, 2014).  Transferred intent requires that the intent to injure a given party and the act that was intended to injure that party but which injured another party occur simultaneously.  That

16

clearly is not the case here where the alleged intent to intrude into the computer of Plaintiff's friend and the alleged act of so intruding occurred long before the spyware made its way into Plaintiff's computer.

Plaintiff also argues that there was an ongoing "intrusion."  However, the word "intrusion," by definition, is not a continuous activity any more than "breaking and entering" is continuous activity.  Once you have broken and entered, the act has been completed and once you have "intruded" the act has been completed.  The act of intruding must co-exist with the intent to intrude on a particular person; absent transferred intent, which is not applicable, there was no intent to intrude into Plaintiff's computer, and none is alleged.

### B.    Intrusion Upon Seclusion is Preempted

The Wiretap Act states as follows:

> (c)    The remedies and sanctions described <u>in this chapter</u> with respect to the interception of electronic communications are the only judicial remedies and sanctions for nonconstitutional violations of this chapter involving such communications.

18 U.S.C. § 2518(10).

Plaintiff spills much ink citing case after case to the effect that the Wiretap Act does not "completely preempt" state law.  *See* Opp. at 30-31.  Plaintiff's response is muddled since he confuses two concepts--"ordinary preemption" and "complete preemption"--that have little to do with each other.  *See Elam v. Kansas City Southern Railway Co*., 635 F.3d 796, 803 (5th Cir. 2011) (discussing distinction between ordinary preemption and complete preemption).  Ordinary preemption, which is at issue here, occurs where a federal law either expressly or by implication displaces a state law, including common law torts.  *See Riegel v. Medtronic, Inc*., 552 U.S. 312 (2008) (Medical Device Amendments expressly preempt most tort actions).  Preemption is an affirmative defense and may not be used as the basis to remove a case to federal court.  *See*

*Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986).  In contrast, "complete preemption" is a jurisdictional doctrine.  If a statute "completely preempts" state law, any claims under that state law are not only displaced but a state court also lacks any jurisdiction to entertain the case; jurisdiction is exclusively within the purview of the federal courts.  The Employee Retirement Income Security Act of 1974 is an example of one of those rare laws that completely preempts state law.  *See Metropolitan Life Ins. Co. v. Taylor*, 481 U. S. 58 (1987).  Thus, the fact that the Wiretap Act does not completely preempt state law is irrelevant.  It is one of many federal laws that have ordinary preemptive effect.

If the Court finds that the Defendant has violated the Wiretap Act, whether a remedy is available or not, then by the plain language of that Act, the Court must dismiss the common law claim because it is powerless to provide any remedy.  Absent the ability to provide a remedy, a federal court lacks Article III jurisdiction.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Thus, by way of example, if this Court were to find that the Wiretap Act had been violated, but that the claim for statutory damages was insufficient to trigger the tort exception, the common law claim would be preempted by the clear language of the Wiretap Act.

**VII.  Plaintiff Concedes that He Is Not Entitled to a Jury Trial or to Declaratory Relief and the FSIA Forecloses Injunctive Relief**

Plaintiff does not take issue with Ethiopia's arguments that neither a trial by jury nor declaratory relief is available under the FSIA.  *See* Memorandum in Support of Motion to Dismiss at 2 n.1.  Nor does he take issue with Ethiopia's argument that neither pendent nor diversity jurisdiction is available.  *See id.*  Those points are therefore conceded.  However, Plaintiff now argues that he is entitled to injunctive relief even though such relief was never sought in the original complaint and even though he lacks standing under *City of Los Angeles v. Lyons*, 461 U.S. 95(1983) to seek such relief.  Even if those impediments were not sufficient, the

18

tort exception only authorizes money damages.  This Court lacks subject matter jurisdiction to entertain any relief other than money damages.

**Conclusion:**

For the foregoing reasons, Defendant's Motion to Dismiss for want of subject matter jurisdiction under the Foreign Sovereign Immunities Act and for failure state to a claim should be granted and Plaintiff's First Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

/s/ Robert P. Charrow
Robert P. Charrow (DC 261958)
Thomas R. Snider (DC 477661)
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
Tele: 202-533-2396; Fax: 202-261-0164
Email: charrowr@gtlaw.com;
snidert@gtlaw.com

Counsel for Defendant Federal Democratic
Republic of Ethiopia